[Sac. No. 356. Department Two.—November 9, 1898.]

## JOHN B. IRISH, Respondent, v. JOHN SUNDERHAUS et al., Appellants.

PLEADING — PRESUMPTION OF CONTINUANCE. — The presumption of continuance is a rule of evidence and not of pleading; but, although a complaint may be found wanting upon special demurrer for absence of an allegation of the continuance of a title averred, yet, after judgment, or upon a general demurrer, the pleading will be sustained.

CORPORATION — ACTION AGAINST STOCKHOLDERS — ASSIGNMENT OF CLAIMS OF CREDITORS — CONTINUED OWNERSHIP — SUFFICIENCY OF COMPLAINT. In an action by an assignee of the claims of certain creditors of a corporation against its stockholders, where the complaint alleged that each of the claims "was duly assigned to the plaintiff before the commencement of the action," but did not aver that plaintiff was still the owner of the claims, it is subject to special demurrer for want of a direct averment of continued ownership thereof; yet, in the absence of a special demurrer, the complaint shows by fair intendment that the plaintiff was the owner of the claims at the time of the commencement of the action, and the objection, for the want of direct averment, cannot be urged for the first time upon appeal.

ID.—INSUFFICIENT DEFENSE—RELEASE BY PROPOSED PURCHASER OF CLAIMS —AGREEMENT WITH ATTORNEY FOR COLLECTION.—A release of the stockholders defendant pending the suit by one who had agreed conditionally to purchase the claims of the creditors involved in the action, from an attorney for such creditors, who had represented them as petitioners for an adjudication in insolvency against the corporation, and to whom they had assigned their claims for collection from the assets of the corporation, without sale of their claims to him, or authority to sell them, the conditions of the agreed purchase never having been fulfilled, is an insufficient defense to an action against the stockholders by a direct assignee of such creditors.

ID.—PURCHASE OF ASSETS OF CORPORATION.—The fact that in lieu of such proposed purchase of the claims of the creditors, a purchase of the assets of the insolvent corporation was arranged between the proposed purchaser and the attorney for the creditors, and that the assets were distributed to the creditors in the manner agreed upon in the original proposal to purchase the claims, does not entitle the purchaser of the assets to have the claims of the creditors transferred to him by the attorney under the proposed conditional contract to purchase the claims.

ID.—EVIDENCE—"UNDERSTANDINGS" OF WITNESS—EFFECT OF CONTRACT. The "understandings" of one of the defendant stockholders as a witness, as to the effect and operation of the contract between

the releasor of the defendants and the attorney for the creditors whose claims are involved in the suit, are not evidence, and should not be received.

ID.—RULINGS RENDERED IMMATERIAL BY FINDING.—Exception to rulings as to the admission of evidence having reference only to the case of the defendants against the attorney for the creditors, assignees of plaintiff under the agreement made with him by defendants' releasor, are rendered immaterial by a finding sustained by the evidence that the claims of the creditors were assigned to the attorney for collection only.

APPEAL from a judgment of the Superior Court of Sierra County and from an order denying a new trial. Stanley A. Smith, Judge.

The main facts are stated in the opinion of the court. The witness Low, referred to in the opinion, was one of the defendants, and the testimony referred to related to his understandings as to the contract between Epstein and Soward, and particularly to his understanding that the amount paid by Epstein was to be in full payment of the claims of the creditors of the corporation.

Frank R. Wehe, for Appellants.

John B. Irish, Respondent in pro. per.

TEMPLE, J.—This action was brought against the stockholders of a corporation by plaintiff as assignee of certain claims of creditors. In the complaint, after setting out the debt of each creditor, and after an averment that the debt is still due and unpaid, plaintiff avers: "That said claim was duly assigned to this plaintiff before the commencement of this action," but it is not averred that he is still the owner of the assigned claim. The complaint was not demurred to, but appellant in this court for the first time objects that the complaint in that respect fails to state a cause of action, and *Holly v. Heiskell,* 112 Cal. 174, is relied upon as authority.

That was an action of "claim and delivery," and it was held that the complaint must show that the plaintiff was entitled to the possession at the time of the commencement of the action; and it was said: "It is not sufficient to merely aver that he was the owner or entitled to the possession at some period prior to

that time." *Williams v. Ashe,* 111 Cal. 180, is referred to. In that case the averment was to the effect that "on and after a day named plaintiff was the owner," et cetera. The case of *Affierbach v. McGovern,* 79 Cal. 268, and *Fredericks v. Tracy,* 98 Cal. 658, are differentiated from that case as follows: "But in both of these cases the radical error was in pleading ownership upon a day certain, and upon no other day, and there was no implication which could be construed as a pleading of continued ownership or right of action at the time of the commencement of the suit." The complaint was held to be not obnoxious to a general demurrer, because "there is still by fair intendment to be gathered from the complaint that he claimed ownership and right of possession at the time of the commencement of his action." (*Amestoy v. Electric etc. Co.,* 95 Cal. 311; *Alexander v. McDow,* 108 Cal. 25.)"

Unless they can be placed upon the proposition that averment of ownership upon a day named rebuts the presumption of continuance, the cases relied upon are inconsistent with the cases cited in the above quotation. If plaintiff had proven an assignment to him prior to the commencement of the action, he would not have been required to show the negative fact that he had not subsequently parted with his title. The presumption is a rule of evidence and cannot take the place of an allegation of an essential fact. Therefore, before a special demurrer such a pleading would be found wanting. But after judgment, or upon a general demurrer, if the facts are found in the complaint, though not logically stated, the pleading will be sustained. Plaintiff's ownership is by "fair intendment" shown at the time the action was commenced.

The stockholders in answer aver, in substance, after denying plaintiff's ownership of the claim, that one Henry Epstein had purchased all of the claims sued upon, and after suit brought, but before the answer was filed, had released all the stockholders from such indebtedness. In proof a written contract between Epstein and one F. D. Soward, dated September 21, 1895, is shown. In this contract it is recited "that Soward was attorney for the petitioning creditors in the insolvency of the Alaska Milling and Mining Company, and attorney in fact for all the creditors who have filed claims; that Epstein, party

of the second part, desired an option for sixty days to pur-
chase and become the owner of said claims." The party of
the first part agreed "to become the owner by assignment and
transfer of all said claims," and in consideration of eight thou-
sand dollars "to execute and deliver to said party of the sec-
ond · part good and sufficient assignments, transfers, and con-
veyances of all said claims," and to pay costs of the proceed-
ing, and at the option of the party of the second part to pro-
cure a dismissal of the proceeding in insolvency or a sale of
the assets by the assignee and a conveyance to Epstein.

As soon as Soward should procure transfers to himself of
the claims, "and upon the execution and delivery by said party
of the first part of a good and sufficient agreement of said
party of the first part agreeing to transfer to said party
of the second part the claims," Epstein was to pay to the
party of the second part five hundred dollars, upon which
payment the party of the second part was to have the
option for sixty days to become the owner of all said claims
upon paying the remaining seven thousand five hundred dollars.
Before that time, however, Soward was to perform all the con-
ditions of the contract and of the additional agreement to be
made; it being understood that these were conditions precedent
to the payment of the seven thousand five hundred dollars by
Epstein. Yet it was "distinctly understood and agreed" that
Epstein "shall in no respect be obligated to pay said sum of
seven thousand five hundred ($7,500) dollars, but that the
payment of said sum of seven thousand five hundred ($7,500)
dollars shall be optional with said party of the second part, and
that said payment of five hundred ($500) dollars is made in
consideration of the option and privilege hereby given."

Attached to the written instrument are exhibits containing
lists of the claims and demands referred to, followed by an agree-
ment signed by Soward to the effect that the eight thousand
dollars, if paid, shall be applied as follows: 1. To pay certain
costs; 2. To pay attorney's fees; 3. To pay laborers in full; 4.
To pay other creditors a *pro rata* proportion.

It will be seen that by the extraordinary agreement Epstein
bound himself to nothing except to pay five hundred dollars
"when the party of the first part shall have procured the neces-

sary assignments and transfers to him," and upon the execution and delivery of another agreement by Soward. And thereon Epstein had an option to pay seven thousand five hundred dollars, and become the owner of said claims, before which, however, Soward was to perform all the conditions of the contract as a condition precedent to the payment by Epstein, which, it is distinctly stipulated, Epstein need not make, notwithstanding entire performance on the part of Soward.

The five hundred dollars was never paid, and the additional agreement called for was not entered into. In fact, Soward was unable "to become the owner by assignment and transfer of all the said claims and demands," until the assets of the insolvent corporation were sold by the assignee.

The contract was never carried out, but, in lieu of it, at Epstein's request, Soward procured a private sale of the assets of the insolvent corporation to certain persons who had contracted with Epstein to purchase the mine.

Upon the sale of this mine and another, in which the same parties were interested, the purchasers paid to the assignee eight thousand dollars. Soward, as attorney for the assignee, received the money and distributed it in the manner agreed upon. It is contended that this was a substantial compliance with the written agreement, and that Epstein, under the terms of that contract was entitled to have the "said claims and demands" transferred to him by Soward. This Soward refused to do, but did assign them to plaintiff, who thereupon commenced this action against the stockholders.

Plaintiff contends that Soward took the assignments from the various creditors for collection merely, and not as absolute owner, and while they expected him to realize as much as possible from the assets of the corporation, and to divide the same as the law would direct, they did not understand that they sold their demands to him, nor did they authorize him to sell them.

If the controversy were only between Epstein and Soward, there could certainly be much plausibility in the contention of the defendants. But admitting that they are right in their construction of the contract made between Epstein and Soward, and that under that contract Epstein is the equitable owner of the demands, they must still show that Soward was able to per-

form by transferring the demands. Plaintiff represents the rights of the creditors, and defendants must not only establish their contention as against Soward but also as against the creditors.

That it was not supposed by Epstein or Soward that the latter would purchase the claims outright is shown by the agreement itself. Soward was to pay the creditors pro rata. They were still creditors to be paid.

The creditors were not told by Soward when he procured the assignments that he intended to transfer their claims and obtain money in that mode. They were simply told that the mine had been sold, and that after paying the costs, fees, and lienors he would be able to pay them about fifty per cent upon their demands. Evidently, this was a representation by him that he would procure for them the value of the assets of the corporation. Why, in order to do that, it was necessary to assign to him does not appear. But he was their attorney, and naturally they did whatever he advised.

Soward testified that no mention of the stockholders was ever made. No creditor supposed, or had reason to suppose, that by this assignment he was doing anything more than to enable his attorney to realize for his benefit the value of the assets. There was no other evidence upon the point. The "understandings" of Low do not constitute evidence at all, and should not have been received.

We cannot disturb the findings of the court to the effect that the several assignments were made to Soward for collection only.

The exceptions to rulings in regard to the admission of evidence have reference to the case of the defendants as against Soward. But if the finding that the claims were assigned to Soward for collection only must stand, that is immaterial.

The judgment and order are affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.