[Civ. No. 1336.    Third Appellate District.—April 28, 1915.]

## ALBERT E. GOLDEN, Respondent, v. OSCAR FISCHER, Appellant and NATIONAL WIRELESS TELEPHONE AND TELEGRAPH COMPANY, Respondent.

CANCELLATION OF PROMISSORY NOTE—PLEADING—OWNERSHIP OF ASSIGNEE—SUFFICIENCY OF COMPLAINT.—A complaint in an action to obtain a decree for the cancellation of a promissory note and for the retransfer of corporate stock pledged to secure the payment of such note is not subject to general demurrer for failure to expressly allege that the plaintiff, to whom the stock and the right to sue therefor had been assigned, was the owner or entitled to the possession at the time of the commencement of the action, where it is alleged that plaintiff's assignor was the owner of the stock up to and including the day, when, it is alleged, he assigned the stock and his right to sue for it to the plaintiff, and the plaintiff brought the action the day following the assignment and alleged that the stock had previously been assigned to him.

ID.—TRANSACTION CONCERNING PLEDGED STOCK—SALE NOT CONSTITUTED. A sale by the pledgor to the pledgee of stock delivered to the latter by the former to secure the payment of a promissory note, is not established by the execution by the parties of a written agreement after the maturity of the note declaring that the "debt shall be and is hereby canceled and said stock shall now become the property" of the pledgee, and that the pledgor "shall have the right or option to purchase the stock" within a provided time for a stated amount, where it is shown by parol evidence that it was not intended thereby to change the legal relations of the parties, the pledgee continued thereafter to hold the note, and the debt was vastly less in amount than the value of the stock.

ID.—EVIDENCE—PAROL EVIDENCE AS TO NATURE OF TRANSACTION.—It is not erroneous to permit the introduction of parol evidence to show that the transaction leading up to the execution of the written agreement did not involve a sale or was not intended to change the legal relation of the parties, notwithstanding that no fraud or coercion was charged in the procurement of the writing.

ID.—DEED AS MORTGAGE—RULE APPLICABLE TO PERSONAL PROPERTY.—The rule of law that parol testimony is competent to show that a deed, absolute upon its face, was not, as a matter of fact, intended to convey the absolute fee but to operate only as a mortgage, is applicable where the subject of the transaction is personal property.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.    Jas. M. Troutt, Judge.

The facts are stated in the opinion of the court.

West & De Journel, and T. C. West, for Appellant.

Jas. H. Boyer, and Brittain & Kuhl, for Respondent A. E. Golden.

Seidenberg & Davis, for Respondent National Wireless Telephone and Telegraph Company.

HART, J.—The object of this suit is to obtain a decree for the cancellation and surrendering to the plaintiff of a certain promissory note, executed and delivered to the appellant by the plaintiff's assignor, and for the retransfer of eighty thousand shares of stock in the Aerial Telephone and Power Company, a corporation, which were pledged by the plaintiff's assignor to the appellant to secure the payment of said note.

The action was tried by the court sitting without a jury, and the plaintiff was given judgment from which this appeal, supported by a bill of exceptions, is presented by the defendant, Fischer.

The complaint states that the plaintiff's assignor, Frank J. Golden, on or about the twenty-third day of June, 1911, borrowed from the defendant, Oscar Fischer, the sum of one thousand dollars, gave the latter his promissory note as evidence thereof, payable on the twenty-third day of September, 1911, and, as security for its payment, pledged, assigned, and delivered to said Fischer eighty thousand shares of the capital stock of the Aerial Telephone and Power Company; that, on the first day of April, 1912, the said Aerial Company, by due legal proceedings had in the superior court in and for the city and county of San Francisco, was dissolved and the directors thereof ordered to distribute its property to its stockholders, in proportion to the amount of stock held by said stockholders; that, prior to the dissolution so effected, the Aerial Company transferred and conveyed to the defendant, National Wireless Telephone and Telegraph Company, all its assets and property for and in consideration of the transfer to said Aerial Company of seven hundred thousand shares of the capital stock of said defendant . . . Wireless . . . Company, and that in the distribution of the assets of the Aerial Company the plaintiff's assignor became entitled to eighty

thousand shares of said Wireless Company; that the stock pledged to the defendant, Fischer, as above explained, entitled the plaintiff's assignor to eighty thousand shares of the capital stock of the said Wireless Company.

It is further alleged that the said Frank J. Golden was the sole and exclusive owner of said stock on the twenty-third day of June, 1911, on which day, as seen, he transferred the same as a pledge to Fischer to secure said note; that the appellant has never sold said stock or foreclosed said pledge; that, on the twenty-third day of August, 1912 (the day immediately preceding that upon which this action was instituted), said Frank J. Golden tendered to Fischer the amount of the indebtedness then due on said note but that Fischer then refused "and still refuses" to accept payment of said indebtedness or to return the said stock to the said Frank J. Golden or to the plaintiff; that, on said twenty-third day of August, 1912, said Golden assigned to the plaintiff said stock and any cause of action accruing in his favor and against the defendants by reason of the transaction described in the complaint.

The complaint also contains averments entitling the plaintiff to *pendente lite* injunctive protection against the sale or other disposition of the stock by Fischer.

The complaint was not challenged on special grounds, but the defendant, Fischer, interposed thereto a general demurrer, which was overruled and thereupon he replied to the complaint by way of a plea in confession and avoidance. Thus he admitted that the stock referred to in the complaint was pledged to him by Frank J. Golden to secure the latter's promissory note, mentioned in the complaint; but alleged that, on or about the 7th day of June, 1912, "the said Frank J. Golden, by an instrument in writing, in consideration of the cancellation of the said debt then due, owing, and unpaid by him to this defendant as aforesaid, sold, conveyed, transferred, and delivered to this defendant all his right, title, and interest in and to the said stock."

Certain other allegations of the complaint, to wit: that Fischer, after the note became due and payable, agreed to extend the time for its payment from month to month; that, on the twenty-third day of August, 1912, there remained due Fischer on said note the sum of one thousand one hundred dollars or any other sum; that said Golden, on the twenty-third

day of August, 1912, tendered Fischer full payment of said note and that said Golden demanded the cancellation and return of said note, are denied.

The point first submitted by the appellant is that the court erred in overruling the demurrer to the first amended complaint. The contention is that this is an action in claim and delivery, and that, to state such a cause of action, it is essential that the complaint should expressly aver that the plaintiff is the owner or entitled to the possession of the property so sought to be reclaimed, and that the complaint here nowhere contains such an averment.

As we view this action, the ultimate purpose thereof is, substantially, to secure a decree declaring that the transaction involved here constituted a pledge rather than the sale of the property in dispute, and is analogous to an action to have a deed, absolute upon its face, declared to have been intended by the parties to operate as a mortgage only. But, if this view of the nature of the relief here sought be, strictly speaking, incorrect, it is nevertheless true that the remedy invoked by the prayer of the complaint and which is justified by the averments thereof, while necessarily having the effect, upon the granting of the relief appropriate thereto, of establishing in the plaintiff the ownership of the stock and the right to the return thereof (conditioned, of course, upon the payment of the indebtedness for which it was pledged) is not appropriate to claim and delivery but is the equitable remedy of cancellation. We therefore, conclude that, in no view, is the action claim and delivery in form.

Conceding, however, for the purposes of this decision, that the action is in claim and delivery, still we believe that the complaint, as against a general demurrer, meets the requirement of such an action in the particular as to which it is thus challenged. All through that pleading it is alleged that Frank J. Golden was the owner of the stock in question up to and including the twenty-third day of August, 1912, when, it is alleged, he assigned the stock and his right to sue for it to the plaintiff, and the plaintiff brought this action the day following said assignment, alleging that the stock had previously been assigned to him. This case, therefore, comes squarely within the rule as laid down in the cases of *Irish* v. *Sanderhaus*, 122 Cal. 308, [54 Pac. 1113], and *Krieger* v. *Feeny*, 14 Cal. App. 543, [112 Pac. 903]; wherein it is held

that, where a complaint alleges that the claim upon which the plaintiff declares "was duly assigned to this plaintiff before the commencement of this action," the pleading, while, perhaps, insufficient to withstand the attack of a special demurrer, is good as against a general demurrer.

It is next insisted that the findings are not supported by the evidence, but there is clearly no substantial ground for such an objection here, as a brief examination of the testimony will readily disclose.

As stated in the complaint, Frank J. Golden, on the twenty-third day of June, 1911, borrowed from the defendant, Fischer, the sum of one thousand dollars, gave the latter his note therefor payable three months from its date, and to secure the repayment of the money so borrowed, pledged to Fischer eighty thousand shares of stock of the Aerial Company. This stock, so a witness testified, was worth about fifteen cents per share, or eleven thousand dollars in excess of the sum to secure the repayment of which it was pledged.

Golden testified that he paid the interest on the note and that, about the time of the date of its maturity (September 23, 1911), an oral undersanding was had between him and Fischer that the time of the payment of the principal should be postponed or extended from month to month. Agreeably to this understanding, the note was, on said September 23d, renewed, the interest having been paid up to that date, upon the further understanding that, from that time on Golden was to pay interest on the note at the rate of twenty-five dollars per month in advance. Thus the matter stood until the seventh day of June, 1912, when Golden, at the request of Fischer, signed a document presented to him by the latter, and which purported to evidence the sale of said stock by Golden to Fischer. The instrument recited the fact of the indebtedness of Golden to Fischer, as evidenced by the promissory note of the former, the fact of the pledging of the stock in question to secure the payment of said indebtedness and the fact that said indebtedness "was now past due and unpaid," and concluded with a statement that "it is hereby mutually agreed by and between said parties that said debt shall be and is hereby canceled, and said stock shall now become the property of Oscar Fischer," and that "said Frank J. Golden, his successors or assigns, or the bearer of the duplicate of this agreement, shall have the right or option

to purchase said stock at any time to the 23d day of July, 1912, for the sum of $1,100.''

Explaining the motive for the execution of the foregoing document, Golden testified that, just prior to its execution, Fischer called at his (Golden's) office and said to him that he had been advised that, in case "anything happened" to Golden and it became necessary to enforce a collection of the note, he (Fischer) would be compelled to bring an action, obtain a judgment, and then sell the stock under an execution, and then proposed, in order to avoid the expense and trouble of an action, that Golden sign the instrument above referred to. Fischer added: "Now, if you will sign this agreement, the matters can run on just the same as they have heretofore. You may pay the interest as you have paid it, and when you are ready, you may take up the stock.'' Golden replied that he was willing to sign the agreement, but that he would consider the transaction in the same light as it always had been. Golden further said to Fischer that he had received several offers to buy the stock, but had refused them. He also said that a Mr. Goldman would lend him the money to take up the stock whenever he desired to do so. Fischer replied that he (Golden) "had just as well let this loan stand until he (Fischer) needed the money.'' Thereupon, with the distinct understanding that the nature of the transaction as it was originally executed should not thereby be changed or affected, Golden signed the instrument or agreement, to which Fischer also subscribed his name.

The promissory note was not, at the time of the execution of said agreement, nor at any other time, redelivered by Fischer to Golden, the former still holding it when the trial of this action took place. Frank J. Golden testified that he received no money or property of any other kind or was given no promise of money or other property by Fischer or any other person for signing the agreement.

On the twenty-third day of July, 1912, which was the last day of the time within which, under the agreement, Golden or his successors in interest might exercise the "option" of "repurchasing" the stock, Golden called on Fischer and offered to take up the note and the stock by the payment of the amount then due, but according to Golden's testimony, Fischer refused the offer, saying to Golden: "Let it run another month. I don't want the money to-day.'' It was then

agreed between them that the time for the payment of the money be extended to the twenty-third day of August, 1912.

On the twenty-second day of August, 1912, Golden met Fischer at an office in the Mills Building, San Francisco, and, testified Golden: "I told him that I would be ready to pay him the $1125 due on this loan on the following day, the 23rd, the day upon which it was due. Mr. Fischer was first evasive and then he finally said, 'Frank, I don't believe I will let you have that stock. That stock is mine.' 'Well,' I says, 'how do you make that out?' 'Well,' he says, 'you didn't take it up on the 23rd of July, as you agreed, and I have decided to keep the stock.'" Golden thereupon stated to Fischer that he (Golden) had the money with which to pay the debt and would have it in his (Golden's) office between 12 and 1 o'clock the following day, August 23d. Fischer replied that he would not accept the money, but would retain the stock. Fischer, however, finally promised Golden that he would call at the latter's office the next day between the hours of 12 and 1 o'clock; but he failed to keep his promise. Thereafter and on said twenty-third day of August, Golden, with the sum of $1,125 in gold (the amount of the debt) in his possession and accompanied by the plaintiff, called at the residence of Fischer, the latter having no office at that time, for the purpose of paying off the indebtedness. Fischer was not then at his residence, according to information Golden received there, and he repeated the visit to said residence four different times thereafter on that day, with the same result. Golden then prepared a letter, addressed to Fischer, and deposited the same under the door of the latter's residence, in which he informed Fischer that he (Golden) had remained at his office between the hours of 12 and 1 o'clock that day, but that Fischer failed to keep his promise to be at said office at that time; that he thereupon visited his (Fischer's) residence, at No. 488 Frederick street, "several times this afternoon and evening to pay you the sum of eleven hundred and twenty-five dollars, the amount due you, . . . but received no response to the door bell"; that "I am prepared to pay you said sum of $1125.00 in U. S. gold coin and also any and all other sums due you on my promissory note or otherwise, and demand from you the cancellation of said note and the re-transfer of said 80,000 shares of stock." The letter, continuing, concluded as follows:

"Please call at my office, 802 Hewes Building, San Francisco, and receive said money, or telephone me at my office, Douglass 832, and I will meet you at any place you designate and pay all sums of money due you and receive said note and stock."

Fischer made no reply to said letter, nor would he ever receive the money from Golden in extinguishment of the obligation evidenced by Golden's note.

Annie Miller, stenographer in Frank J. Golden's office, testified that she was present in said office on the twenty-third day of July, 1912, when the defendant, Fischer, was there, and that she heard the latter say to Golden: "Well, Frank, we will let our matter go until next month," to which Golden replied: "Well, Mr. Fischer, if you need the money I have made arrangements with Mr. Goldman, and I can get it for you." Fischer retorted: "Oh, that's all right; you have got enough trouble this month (referring to a death which occurred in Golden's family a few days previously); I won't need it until next month."

We have now presented a synopsis of all the testimony introduced in the case, and to which the appellant affirmatively vouchsafed no reply by way of proof.

The defendant, Fischer, moved for a nonsuit on the close of the plaintiff's case, and the same was denied.

There is hardly any necessity for a discussion here of the effect of the testimony, for it plainly speaks for itself. No one can read it and find any possible reason for doubting that it not only amply supports but that it justified the finding that the transaction of June 7, 1912, whereby the parties to this appeal executed the agreement purporting to be evidence of the sale of the stock by Golden to Fischer, did not in fact constitute a sale and that it was not intended or understood to operate as such. The character and the language of the instrument itself seem to us to sustain the testimony of Golden upon that point. It is not, in form, strictly a bill of sale, which is ordinarily the mode of evidencing the transfer of title to personal property, even though such an instrument as the one here might, under certain conceivable circumstances (not present here), properly be so construed. It is a bilateral agreement and between a pledgor and pledgee of the stock, and, considered by the light of the only testimony in the case, undoubtedly it was intended to mean that, within the time specified, Golden, or his successors or assigns "or the bearer

of the duplicate of this agreement,'' may secure a return of the stock by paying the amount of Golden's indebtedness to Fischer.

But, even if the agreement, upon its face, might be construed according to the view of the appellant, it is very plain that such a construction, under the testimony as to the value of the stock, would lead to an obvious absurdity, and the rule is that where the language of a contract is not altogether free from ambiguity as to its meaning, such language must not be given an interpretation which would involve an absurdity. (Civ. Code, sec. 1638.)

The disparity between the value of the stock, as fixed by the witness, Leon Goldman, a stockbroker, and the amount for which Fischer claims to have purchased it from Frank J. Golden, is so great as to irresistibly lead to the conclusion that the latter could not have intended the transaction as a sale. It is scarcely necessary to suggest that no one in his right senses would transfer the title to property of the approximate value of twelve thousand dollars to another in consideration of a promissory note for the sum of one thousand one hundred and twenty-five dollars.

Nor is it probable, if the transaction had been intended as a sale, that the vendor would not have insisted upon a cancellation and redelivery to him, at the time of the sale, of his promissory note, which constituted, according to the agreement, the sole consideration for the alleged transfer.

But, even if the transaction was intended as a sale, Golden had the absolute right or option to repurchase the stock within the time specified in the agreement. And that he offered to ''repurchase'' it within said time, as the court found was true, is borne out by the undisputed testimony of Golden, the appellant himself, however, at that time insisting that the matter of the ''repurchase'' be postponed for another month from the last day of said time and Golden agreeing thereto and renewing his offer at the time to which it was thus extended.

But we have sufficiently dwelt upon the point that the evidence does not support the findings of fact vital to the support of the judgment. As before stated, there is no possible ground to support the claim that it does not. In fact, so far as this claim is concerned, this appeal is not even within the shadow of a foundation for its support.

It is next claimed that the court seriously erred, with resultant damage to the rights of the appellant, in allowing parol evidence showing that the transaction of June 7, 1912, did not involve a sale or was not intended to change the legal relations of the parties as they had up to that time existed. It seems to be the view of learned counsel that, to render parol testimony admissible for the purpose of showing that an instrument of the character of the one here was not intended to have the effect which its language might imply, it is necessary to charge in the complaint actual fraud or coercion or some other illegal means in the procurement of the execution of the writing. But we hold this to be an erroneous view so far as it is sought to be applied to the case at bar.

It was not requisite to plead actual fraud or a resort to other illegal methods in securing the signature of Golden to the agreement to justify the admission of testimony extrinsic to the agreement itself showing or tending to show that said instrument was not intended to stand as the evidence of a sale. Indeed, there was no evidence to support allegations of actual fraud or coercion in the procurement of the execution of the agreement, and the agreement, in its conception, inception, and execution, so far as the evidence gives any direct information on the subject, might have been characterized by perfect good faith on the part of Fischer and with the intention in him then that it should operate as Golden testified was the understood purpose of the parties with respect thereto at the time of its execution. The fraud, so far as there is any direct disclosure upon that subject by the proofs, arose in the subsequent act of Fischer in attempting to treat the agreement as an evidence of a sale of the property rather than as a pledge thereof to secure a debt vastly less in amount than the value of the property. The facts as to his conduct in claiming ownership of the stock upon his construction of the agreement speak for themselves, and, if fraud was an essential ingredient of the action, it was only necessary to plead the facts of the transaction as they occurred to raise the implication of fraud or to show that the claim of Fischer, if sustained, would work a fraud upon the just rights of Golden.

But it is as firmly settled as any rule of law may be that parol testimony is competent to show that a deed, absolute upon its face, was not, as a matter of fact, intended to convey

the absolute fee but to operate only as a mortgage, and this relief is available in such a case, even if there was no actual fraud imputed to the mortgagee in the transaction. It is only necessary to refer to a few cases lucidly explaining and aptly applying this principle. (See *Peninsula etc. Co.* v. *Pacific S. W. Co.,* 123 Cal. 694, [56 Pac. 604] ; *Woods* v. *Jensen.* 130 Cal. 206, [62 Pac. 473] ; *Couts* v.. *Winston,* 153 Cal. 690, [96 Pac. 357].)

There is no reason in principle why the same rule should not appropriately be applied where the subject of the transaction is personal property, and we hold that it does and that the rulings complained of did not contravene the rule forbidding the alteration or variation or modification of a written instrument by parol testimony and were, therefore, legally proper and correct.

There are some other rulings admitting certain testimony to which exceptions were reserved and which are here urged as having been of sufficient force to exert a prejudicial influence in producing the result arrived at by the trial court. We have examined these rulings and are convinced from such examination that their effect was only to admit into the record relevant, competent, and peculiarly pertinent testimony under the theory of the action as we understand and have explained it.

The motion for a nonsuit was properly denied, and the judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.