[S. F. No. 5322. Department Two.—December 28, 1911.]

## A. L. HUDGENS, Appellant, v. F. O. CHAMBERLAIN and WILLIAM HINKEL, Respondents.

PLEDGE OF MINING STOCK—POWER OF SALE UPON DEFAULT—RIGHT OF PLEDGEE TO PURCHASE—GOOD FAITH IN SALE REQUIRED.—Under a pledge of mining stock, which has a market value, as collateral security for the payment of one or more notes, by the terms of which, upon default in payment, the pledgee may sell the stock at public or private sale, without notice, and may purchase the same at the sale, it is required that the sale must be fair and *bona fide.* From the fact that the sale may be without notice, the law implies that it must be made in good faith; and the fact also that, under the code, the contract of pledge may provide for the purchase of the pledged property by the pledgee himself, which was not permitted at common law, affords an additional reason why the pledgee is held to the utmost good faith in dealing with the pledged property.

ID.—TRUST RELATION BETWEEN PLEDGOR AND PLEDGEE.—In such case the relation between the pledgor and pledgee of the mining stock as security for the payment of a debt, with power of sale, in case of default, is in the nature of a trust relation. The responsibility of the pledgee to the pledgor is similar to that of a trustee, who is bound to deliver it to the pledgor, if the debt is paid, and to pay over to the pledgor any surplus which may remain, and as an incident to such trust relation the power of sale vested in the pledgee must be exercised with ordinary care and prudence and in good faith for the benefit of both the pledgor and pledgee, and to obtain what the stock is worth at the time the pledgee concludes to sell it.

ID.—LEGAL RIGHTS OF PLEDGEE—SALE AT MARKET PRICES—ABSENCE OF LIMITATION IN CONTRACT—SALE ON DEPRESSED MARKET—PURCHASE AT PREVAILING RATES.—After default of the pledgor the pledgee has a lawful right to sell the pledged mining stock at market prices, and if the market is depressed or depreciated without fault of the pledgee, he is under no obligation to take any chances on the market,

or wait for a more favorable one than exists when he elects to sell, if no limitation upon the condition of the market when sales are to be made is provided in the contract. In such case the pledgee may sell the pledges at market rates, no matter what may be the condition of the market; nor will it be of any moment that by selling the stock on a depressed market he has the opportunity to purchase the stock at the rates then happening to prevail.

ID.—FRAUDULENT COLLUSION BETWEEN INDEPENDENT PLEDGORS FOR JOINT SALE TO DEPRECIATE MARKET—CAUSE OF ACTION FOR DAMAGE.—A complaint the averments of which show that two independent pledgees of distinct blocks of plaintiff's mining stock, to secure distinct debts under distinct rights, fraudulently and collusively agreed jointly to offer for sale such distinct blocks of pledged stock, for the sole purpose of thereby depreciating the entire stock in the existing market, and creating a panic therein, so as to secure a sale thereof at greatly reduced figures for their joint benefit, and that they so did in fraud of the rights of the plaintiff to his damage, in a specified sum, states a cause of action for such damage; and a demurrer thereto was improperly sustained.

ID.—PARTIES—DEFENDANTS PROPERLY JOINED.—The defendants, though independent pledgees, being charged in the complaint with having conspired together to violate their duties to plaintiff with reference to the pledged property, and that as a result of their joint action in this respect, plaintiff sustained the damage complained of, they were properly joined as defendants.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge.

The facts are stated in the opinion of the court.

Campbell, Metson, Drew, Oatman & Mackenzie, for Appellant.

Morrison & Brobeck, Morrison, Cope & Brobeck, and Edward Hohfield, for Respondents.

LORIGAN, J.—This is an appeal from a judgment entered in favor of defendants on demurrer sustained to the amended complaint of the plaintiff.

The second amended complaint alleged that plaintiff was indebted to F. O. Chamberlain on a promissory note in the sum of twelve thousand dollars and that as collateral security for the payment of said note plaintiff pledged to said Chamberlain five thousand shares of the capital stock of the Florence-

Goldfield Mining Company under a written contract authorizing Chamberlain, at any time after default in the payment of said note, to sell said stock or any part thereof at public or private sale without notice to plaintiff and apply the proceeds to the payment of the indebtedness due on said note; that plaintiff was also indebted to defendant William Hinkel on two several promissory notes executed at different times, each in the sum of ten thousand dollars, and that as collateral security for the payment of each of said notes plaintiff pledged to William Hinkel five thousand shares of the capital stock of the said Florence-Goldfield Mining Company respectively (or ten thousand shares for the two notes) under a contract similar in its terms to that executed in favor of Chamberlain and above referred to; that said Chamberlain and said William Hinkel, respectively, held said shares of stock pledged to them as collateral security under said contracts for the payment of their said respective notes until October 12, 1907; that a long time prior thereto, and on said latter date, said stock had been and was listed on the San Francisco Stock Exchange Board; that there existed an active daily demand therefor at prices ranging from three dollars to four dollars per share during said time and that shares were daily sold and purchased at said figures, the number of. shares, however, sold and purchased daily in said board seldom exceeding four thousand shares.

It is then alleged, as the gist of plaintiff's cause of action, that on or about the said twelfth day of October, 1907, "the said defendants, F. O. Chamberlain and William Hinkel, for the purpose of cheating and defrauding said plaintiff, and for the purpose of enriching themselves at the expense of said plaintiff, fraudulently conspired, together and collusively agreed that they would on the said 12th day of October, 1907, in the said stock and exchange board offer for sale the said shares of stock so pledged to them as aforesaid in quantities greater than the same could be sold at the then ruling market price, to wit, the sum of $3.00 per share under the then existing daily demands therefor in said stock and exchange board, and thereby create a panic in said stock and exchange board in connection with said shares of stock and with sales thereof, and thereby depreciate the then existing market value thereof, to wit, the said sum of $3.00 per share, and by reason of such panic and consequent depreciation of said market value pur-

chase the same at greatly reduced rates from those for which the same were then and there being daily sold, to wit, the said sum of $3.00 per share, and that the said defendants did on the said 12th day of October, 1907, offer for sale in said stock and exchange board the said shares of stock as aforesaid in such quantities and did create a panic in connection therewith in the said stock and exhange board and did by reason thereof depreciate the price of the said stock at said time from $3.00 per share to about the average sum of $2.00 per share, and that at the said time there was sold by the said defendants for their joint account about 11,900 shares of said capital stock for the sum of $24,560.00, the said sum being an amount about $11,140.00 less than the said market value of said shares in said stock and exchange board at said time and at which the same were being sold and had been sold for on the preceding day and at the opening of said stock and exchange board on the said day, all of which was done in pursuance of said fraudulent conspiracy and collusive agreement of the said defendants to have the said stock depreciated in value and sold at depreciated prices, and for the purpose of enriching themselves at the expense of said plaintiff by a purchase of said stock at such depreciated prices, and not for the purpose of securing to them the payment of said promissory notes or any part thereof, and that at the said sales the said defendants purchased jointly the greater portion of the said 11,900 shares of stock to and for their own use and benefit"; that by reason of said conspiracy and collusion and fraudulent agreement, and through said fraudulent sales and purchases plaintiff suffered damage in the sum of $11,140, for which he prayed judgment.

A demurrer to the complaint was interposed by defendants and sustained and this appeal involves solely the correctness of the ruling of the superior court in that respect.

The position of respondents in support of the ruling of the lower court sustaining their demurrer is, as stated in their brief, that reliance is placed by appellant on his right of recovery solely upon the facts alleged,—namely, that in the exercise of a perfectly lawful power of sale and the consequent putting of the pledged property upon the market for sale, the price theretofore prevailing was lowered and the property bid in at a price of about two dollars per share instead of

the price of three dollars theretofore prevailing, accompanied with the further allegation that these things were done with the selfish intention upon the part of respondents to profit by their acts and that these acts resulted in damage to the plaintiff. And it is claimed that as the allegations of the complaint showed that the defendants were exercising lawful rights in making the sale in a lawful way that the facts alleged that their lawful acts and lawful method of sale were with the intention of bidding in the stock for themselves at a reduced rate, does not make their conduct actionable, relying on *Boyson* v. *Thorn,* 98 Cal. 578, [21 L. R. A. 233, 33 Pac. 492] ; *People* v. *Schmitz,* 7 Cal. App. 330, [15 L. R. A. (N. S.) 717, 94 Pac. 407, 419], and *Parkinson* v. *Building Trades Council,* 154 Cal. 581, [16 Ann. Cas. 1165, 21 L. R. A. (N. S.) 550, 98 Pac. 1027], the principle of which cases is that where a party is exercising an absolute legal right, such exercise cannot be considered as wrongful or actionable. merely because a malicious motive or intent may have prompted its exercise.

If the allegations of the complaint amounted to nothing more than the construction placed on them by respondents, there could be no question of the correctness of their position in support of the ruling on the demurrer.

It is, of course, well settled that a pledgee under such contracts as are shown here may sell the property pledged in satisfaction of the pledges and purchase the same at the sale thereof, the only requirement being that the sale shall be fair and *bona fide.* After default he has a lawful right to sell them at any time and as long as the sale is made at market prices the mere fact that they are sold in an unfavorable condition of the market and consequently bring a low price affords no ground for complaint on the part of the pledgor. The pledgee is under no obligation to take any chances on the market or wait for a more favorable one than exists when he elects to sell. If any limitation was to be placed upon the condition of the market at which the sales of the pledged property were to be made after default, the pledgor should have provided for this in his contract. Having failed to do so, when the lawful right to sell has accrued, the pledgee may dispose of the pledges at market rates, no matter what the condition of the market may be, nor will it be of any moment that by selling the stock on a depressed market he is afforded an oppor-

tunity of purchasing the property at the rates then happening to prevail and which may be the result only of a temporary depression of the market.

But we do not construe the complaint as alleging facts showing simply that the defendants upon the default of the plaintiff proceeded merely to exercise their legal rights to sell the stock in the then condition of the market unaffected by any action on their part. On the contrary, it appears from the allegations of the complaint that these defendants held their stock independently of each other and each block of stock as a separate pledge for the payment of their individual notes and they collusively agreed to jointly offer for sale the separate shares of stock pledged to each with the sole purpose of thereby depreciating the value of the stock in the then existing market, thereby creating a panic and as a result thereof lessening the value of the stock so as to be able to purchase it at greatly reduced figures, and that they did so. We think this clearly states a cause of action.

The relation existing between parties to a transaction where collateral is placed in the hands of the pledgee as security for the payment of a debt with power of sale in case of default is in the nature of a trust relation. The responsibility of the pledgee to the pledgor is similar to that of a trustee; he holds the stock for specific purposes,—namely, to return it to the pledgor should the indebtedness it is given to secure be paid, or if under a power of sale it is disposed of, to pay over to the pledgor any surplus which may remain, and as an incident to such trust relation, the power of sale which is vested in the pledgee must be exercised with ordinary care and prudence and in good faith for the benefit of both the pledgor and the pledgee, and to obtain what the stock is worth at the time the pledgee concludes to sell it. (Jones on Pledges and Collateral Security, subd. 631b, p. 679; *German American State Bank* v. *Spokane etc. R. & N. Co.*, 49 Wash. 359, [95 Pac. 261]; *Newsome* v. *Davis*, 133 Mass. 343; *Napier* v. *Central Georgia Bank*, 68 Ga. 637.)

And where, as in the agreement at bar, a general power to sell at any time without notice is given and the right to purchase at such a sale conferred on the pledgee, it is no answer to a complaint that the sale was made without due regard to the rights of the pledgee to say that a literal compliance with the

terms of the power were carried out, because, no matter to
what extent unlimited power to deal with the pledged property
is given, the law implies from the relation of the parties that
these powers shall be exercised in good faith and with due
regard to the interests of the pledgee. The fact, too, that
under our code the contract of pledge may provide for the
purchase of the pledged property by the pledgee himself,
which was not permitted at common law, affords an additional
reason why the pledgee is to be held to the strictest good faith
in dealing with the pledged property.

In the matter at bar either one of the defendants under the
general power to sell the stock pledged to him might have
made a sale of it in the open market or at private sale at
market rates at any time after default of the pledgor. Neither
was required to wait for a more favorable market than existed
when the power of sale was exercised, and if the market hap-
pened then to be depreciated he was under no obligation to
wait for a more favorable one, and if the effect of selling upon
the then existing market was to permit him to purchase the
stock at figures less than prior or subsequent market rates,
and his motive in selling at the time was to purchase the stock
at the then prevailing rates, this could afford no ground of
complaint by the pledgor because the pledgee had done nothing
to depreciate the market but took it as he found it when he
had a right to exercise his power of sale and his equally legal
right to become a purchaser with any other bidder at market
rates.

But this is not the situation made by the complaint. Here
the respondents had no pledges of the stock for their joint
benefit, but as independent pledgees. Each was under both a
legal and moral obligation to deal with the pledged stocks in
good faith and to exercise reasonable care and prudence to
obtain as near their value upon a sale as they were worth.
Instead of doing this, it is alleged that they entered into a
collusive agreement whereby they should deal jointly with
the stock held by them independently, not for the purpose of
securing by a sale thereof payment of the indebtedness due
on their respective promissory notes, but so as to afford an
opportunity to purchase the stock for their own benefit and
advantage at the expense of the plaintiff; that in order to
accomplish this they secretly agreed that they would place

on the market the stock held independently by them as pledgees in such large quantities as would create a panic and depreciate the ordinary market value of the stock and thereby force the ruling price down so that they might become purchasers of it; that they placed the stock on the market for that purpose and that it had the effect intended. These allegations show that the defendants were not attempting to proceed in a lawful manner to assert their legal rights as pledgees. Their legal duty was to proceed in good faith to acquire the best obtainable price for the pledged stock, and while they owed no duty to the plaintiff to wait for a stronger market than existed when they elected to sell, they did owe him the duty of taking no joint measures to purposely create a weak one, and when they secretly joined their forces, combined their stock held independently and unloaded it on the market in quantities larger than they knew the market could sustain with the intention and for the purpose of depreciating its value and thereby enabling them to purchase it for their own benefit, they were not acting in good faith nor with regard to the rights of the plaintiff, but in violation of their obligation to him, and for the damage which plaintiff sustained thereby an action will lie, and the complaint in that respect sufficiently stated a cause of action.

While there can be no doubt from the discussion in the briefs that the demurrer was sustained by the trial court on the ground that it stated no cause of action, it is further insisted by respondents that if this point was not well taken, the demurrer was nevertheless properly sustained for various special grounds of attack made on the complaint. As one of these, it is claimed that the defendants were improperly joined as parties. There is no force in this. The defendants are charged in the complaint with having conspired together to violate their duties to plaintiff with reference to the pledged property and that as a result of their joint action in this respect plaintiff sustained the damage complained of. Hence they were properly joined as defendants. The other claim that the complaint is in certain respects ambiguous and uncertain we do not think tenable.

The judgment appealed from is reversed.

Henshaw, J., and Melvin, J., concurred.

Hearing in Bank denied.