[Civ. No. 792.  Fourth Appellate District.—June 14, 1933.]

CHARLES W. TRACY, Appellant, v. STOCK ASSUR-
ANCE BUREAU et al., Respondents.

R. W. Henderson and W. C. Dorris for Appellant.

Coker F. Rathbone for Respondents.

JENNINGS, J.—The plaintiff instituted this action to compel the defendants to return to him shares of stock of a certain corporation or if return of said stock could not be had, to recover the market value of the stock, which was alleged to be the sum of $1400. The original complaint filed in the suit set forth a cause of action for conversion of the stock. It alleged that on October 10, 1928, the plaintiff and defendants had entered into a written contract, which was attached to the pleading as an exhibit and by reference made a part thereof, and that in accordance with the contract and contemporaneously with its execution the defendants had delivered to the plaintiff the draft of the defendant Stock Assurance Bureau for the sum of $996.96 and as security for the repayment of said sum plaintiff delivered to defendants 20 shares of stock of the Inland Steel Company. It was further alleged that the written contract of the parties provided that upon demand by the plaintiff within 30 days after the expiration of 12 months from the date of the execution of the contract the defendant Stock Assurance Bureau agreed to return the shares of stock or their equivalent in like certificates together with dividends or interest paid or accrued thereon or at the

option of either party the market value of said stock, provided that, as a condition precedent to plaintiff's right to demand the return of the stock or its market value, plaintiff was required to redeliver to the defendant the aforesaid draft unnegotiated or if the draft had been negotiated to obtain the same by paying the bank upon which it was drawn or the said defendant the amount received thereon. The complaint alleged that within 30 days from the expiration of the 12-month period, plaintiff secured the return of the draft from the bank on which it was drawn and appointed the bank as his agent to return the draft to defendant Stock Assurance Bureau and to demand and receive from defendants the shares of stock or their equivalent in like certificates or at the option of defendants the then market value of said stock and that thereafter and within the 30-day period the bank, acting as plaintiff's agent, tendered and offered to return the draft to the defendant Stock Assurance Bureau, but that the defendants refused to return the pledged certificates or equivalent certificates representing shares of stock in the aforesaid corporation or to pay to plaintiff any part of the market value of the stock. The answer filed by the defendants contained a denial that the plaintiff had secured the return of the draft from the bank on which it was drawn or that he had appointed the bank his agent to redeliver the draft to defendant Stock Assurance Bureau, and to demand and receive from said defendant the shares of stock mentioned in the complaint. For a further defense to the complaint the answer alleged that at the time the written contract mentioned in the complaint was executed the plaintiff sold, assigned and transferred to the defendants all his right, title and interest in and to the 20 shares of stock of the Inland Steel Company by an instrument of absolute and final assignment and transfer which was attached to the answer and by reference made a part thereof. The answer also alleged that the plaintiff had failed to comply with the terms of his written contract within the time specified therein and had consequently forfeited all rights thereunder. The answer denied that, at any time prior to the commencement of the action, plaintiff had tendered or offered to return the draft for $996.96 to any of the defendants and further denied that defendants had refused, before the commencement of the action, to re-

turn the stock certificates or their equivalent or to pay the market value thereof and alleged that they were at all times willing to comply with the terms of the contract upon performance by the plaintiff on his part of all conditions and covenants required of him. Upon the issues thus framed by the pleadings the action proceeded to trial.

During the trial evidence was submitted to the court which showed that on or about November 24, 1928, the defendants made an absolute sale and transfer of the 20 shares of stock which had been deposited with them by plaintiff contemporaneously with the execution of the written contract of October 10, 1928, and received therefor the sum of $1520, and that subsequent to such sale and transfer they had not acquired or held any stock of the Inland Steel Company. It further appeared from the evidence submitted during the trial that the plaintiff did not during the 30-day period immediately following October 10, 1929, secure the draft for $996.96 from the bank on which it was drawn and tender the same to the defendants or either of them.

After the trial of the action was concluded plaintiff moved the court for permission to file an amendment to his original complaint. The motion was granted and the pleading was accordingly filed.

· This amendment to the complaint purports to set forth a second cause of action. New matters which are alleged therein consist of the following: That the defendants made an absolute sale and transfer of the stock on November 24, 1928, and received therefor the sum of $1520, which was the market value of the stock at that time; that neither at the time the sale was consummated nor at any time subsequent thereto have the defendants held or acquired any stock of the Inland Steel Company other than the certificate representing the 20 shares of said stock which was deposited with said defendants by the plaintiff on October 10, 1928; that subsequent to the sale of said stock by the defendants on November 24, 1928, the market value of the stock increased to $2,100; that the defendants have not paid to plaintiff any sum whatever for or on account of the said stock and the sum of $1103.04 is due, owing and unpaid from the defendants to plaintiff. The pleading concludes with a prayer for judgment in plaintiff's favor for the sum

of $1103.04 and costs and for such other and further relief as may be equitable and just.

Upon the conclusion of the trial of the action and after the amendment to the complaint had been filed as aforesaid the court made its findings of fact from which it drew the legal conclusion that the plaintiff was not entitled to recover anything from the defendants. Judgment was accordingly rendered that the defendants have and recover from plaintiff their costs incurred in the action. The plaintiff thereafter presented to the court a motion for a new trial, which was by the court denied. Thereupon the plaintiff appealed from the judgment rendered in favor of the defendants as aforesaid.

In entering upon a consideration of the various matters which are presented by this appeal, certain preliminary contentions advanced by each of the opposing parties may properly first be discussed.

It is a fundamental contention of respondents on this appeal, and apparently the contention was successfully advanced during the trial of the action, that the separate instrument of assignment executed by appellant contemporaneously with the execution of the written contract of October 10, 1928, conveyed to respondent Stock Assurance Bureau all right, title and interest of appellant in the 20 shares of stock. In other words, it is confidently urged that an outright sale and transfer of the stock to said respondent was consummated and the said respondent thereupon became the owner of the stock free from any lien or claim of appellant and could therefore deal with the stock as it saw fit. Manifestly if this contention is correct the judgment of the trial court was proper and this appeal is entirely lacking in merit. We entertain the opinion, however, that the contention of respondents in this regard may not prevail. The written contract entered into between appellant and respondent Stock Assurance Bureau discloses the nature of the transaction between the parties and their rights with respect to the shares of stock are fixed and determined by the provisions of this agreement. No more than a casual examination of the instrument is required to discover that the stock was deposited by appellant with the respondent Stock Assurance Bureau, to secure the repayment to said respondent of the sum of $996.96 advanced by respondent

to appellant. In other words, the stock was pledged to secure repayment of a loan of money. It is an established principle in this state that, as between a pledgor and pledgee, the general property in a pledge remains in the pledgor, notwithstanding an apparent transfer of legal title to the pledgee. (*Shattuck & Desmond etc. Co.* v. *Gillelen*, 154 Cal. 778, 784 [99 Pac. 348]; *Sparks* v. *Caldwell*, 157 Cal. 401, 403 [108 Pac. 276]; *Golden* v. *Fischer*, 27 Cal. App. 271 [149 Pac. 797].)

Equally unmeritorious, in our opinion, is the contention of appellant that the sale of the stock by the pledgee was unauthorized and constituted a conversion of the pledged property. The written contract relied upon by appellant as the very basis of his right to recover from respondents expressly authorizes the pledgee "at any time it so sees fit to sell, assign, pledge, hypothecate or collect the whole or any part of said securities or any substitute therefor at public or private sale without any demand, advertisement or notice, such demand, advertisement and notice being expressly waived by the assured", appellant herein. It is doubtful if language more apt to confer upon the pledgee a power of sale could have been used. Since the sale of the pledged stock by the pledgee was so specifically authorized by the pledgor such sale could not amount to a conversion. (*Hyatt* v. *Argenti*, 3 Cal. 151.)

We also entertain the opinion that appellant may not successfully maintain, under the circumstances presented by the record herein, that respondents were guilty of conversion in having failed to return to him the pledged stock or its equivalent, or in having refused to pay him its market value upon demand and repayment by him to respondents of the sum of money originally advanced by them within the time provided in the written contract for the reason that we cannot discover from the record that appellant complied with the necessary condition precedent of repayment of the sum advanced within a period of 30 days subsequent to October 10, 1929. The trial court found that appellant at the time this action was instituted on November 27, 1929, "had failed to do or to perform any of the covenants and agreements incumbent upon him, by reason of the contract sued upon". It is obvious that the language of the finding is sufficiently broad to warrant the implication that the court

found that appellant had not tendered repayment of the sum advanced to him which, under the terms of his contract, he was obligated to do in order to entitle him to demand the return of the pledged stock or its equivalent and the record contains ample evidence to support such a finding.

The record also shows, however, that respondents sold the pledged stock and received therefor the sum of $1520. It is a fundamental principle of the law with respect to pledges that the relation existing between parties to a transaction whereby collateral is placed in the hands of a pledgee as security for the payment of a debt, is in the nature of a trust relation and that, if disposition is made of the pledged property under a power of sale, the pledgee is under the responsibility of paying to the pledgor any surplus which may remain after deducting the amount of the indebtedness (*Sparks* v. *Caldwell*, 157 Cal. 401, 403 [108 Pac. 276] ; *Hudgens* v. *Chamberlain*, 161 Cal. 710, 715 [120 Pac. 422] ).

The sale of the stock pledged with respondent Stock Assurance Bureau by appellant, for a sum in excess of the amount of indebtedness which the pledge was given to secure imposed upon the pledgee the duty to pay over to appellant the surplus remaining in its hands after the indebtedness was satisfied. The right of appellant to recover the surplus could have been readily enforced by appropriate action, e. g., an action for money had and received. Appellant, however, having granted to the pledgee the broad power to sell the stock at any time the pledgee might see fit could not complain that the pledged stock was sold for a smaller sum than might have been realized had the pledgor delayed the sale to a later date when a larger sum might have been obtained (*Hudgens* v. *Chamberlain, supra; Williams* v. *Parker*, 30 Cal. App. 71, 74 [157 Pac. 550] ). Appellant was not, therefore, entitled to recover the amount specified in the prayer of his amendment to the original complaint which was the difference between the amount of the indebtedness and the amount which could have been realized if the pledgee had delayed the sale to a time when the market value of the stock was $105 per share instead of $76 per share, the figure at which the sale was made.

It must be observed that appellant herein did not, in his original complaint, bring an action to recover the sur-

plus. This pleading was framed on the theory that proper tender and demand was made within the period specified in the elaborate contract made by the parties and that respondents were liable for the market value of the stock in an action for conversion. The amendment to the complaint permitted to be filed after the case was fully tried sought recovery of the surplus under the mistaken theory that the pledgee was under the duty to sell at the most favorable market. This latter pleading, however, was also framed on the theory of conversion. It is manifest that under the circumstances presented by the record, there was no conversion of the pledged property. This is obviously true because, in the first place, the written agreement of the parties expressly authorized the pledgee to sell the stock at any time it should see fit and, in the second place, the evidence showed that appellant did not comply with the provisions of the contract which required him, within a limited time, to make repayment of his indebtedness and demand the return of the stock or payment to him of the then market value of the stock.

We entertain the opinion, however, that appellant was not foreclosed by the form of the action from recovering whatever amount the evidence showed he was entitled to receive. Inasmuch as there is but one form of civil action in this state, a plaintiff may recover if his complaint states any cause of action which entitles him to any relief at law or in equity (*Zellner* v. *Wassman*, 184 Cal. 80, 87 [193 Pac. 84, 87]; *Hayden* v. *Collins*, 1 Cal. App. 259, 261 [81 Pac. 1120]). "It is not essential that a complaint state a cause of action for the relief which plaintiff seeks, provided the facts stated show some right of recovery, and a party cannot be thrown out of court merely because he may have misconceived the form of relief to which he is entitled." (*Zellner* v. *Wassman, supra.*) We think that the amendment to the complaint which contained allegations that the stock was deposited by appellant to secure repayment of the sum advanced to him and that it was later sold by respondents for a specified sum which was in excess of the amount of the indebtedness sufficiently exhibited facts which entitled appellant to relief. The pleading contained a prayer for such relief as might be equitable and just in the premises. We entertain the opinion that the trial court might properly have allowed to appellant recovery of such surplus as re-

mained in respondents' hands after the amount of appellant's indebtedness was subtracted therefrom. ■ We are also of the opinion that this court may from the record herein presented make appropriate findings and direct that judgment be entered for the correct amount. The following findings of fact are therefore made from the record herein presented which are to take the place of the findings heretofore made by the trial court:

(1) That each and all of the allegations contained in paragraphs I, II, III and IV of plaintiff's amendment to complaint are true.

(2) That in accordance with the provisions of the written agreement entered into between plaintiff and defendant Stock Assurance Bureau, on October 10, 1928, said defendant covenanted and agreed that it would, upon demand of the plaintiff made within 30 days after October 10, 1929, return to plaintiff the pledged property consisting of 20 shares of stock of the Inland Steel Company, a corporation, or the equivalent thereof in like shares or at the option of either plaintiff or said defendant, pay to plaintiff the market value of said stock at the time of the demand, provided that, as a condition precedent to the return of said stock or its equivalent or the payment of the market value of said stock, plaintiff should repay to said defendant the amount of money advanced to plaintiff by said defendant on October 10, 1928.

(3) That plaintiff did not within the time provided in said written agreement pay or offer to pay to defendant Stock Assurance Bureau the amount advanced to plaintiff, or any part thereof.

(4) That the sale of plaintiff's stock by defendants on or about November 24, 1928, was in accordance with the authority expressly granted to defendant Stock Assurance Bureau by the terms of the written agreement entered into between plaintiff and said defendant on October 10, 1928.

(5) That upon the expiration of the 30-day period after October 10, 1929, plaintiff was indebted to defendant Stock Assurance Bureau in the amount of $1,072, which amount the said defendant was entitled to retain from the proceeds of the sale of said stock.

(6) That after deducting the sum of $1,072 from the proceeds realized from the sale of said 20 shares of stock deposited with defendant Stock Assurance Bureau as secu-

rity for the repayment to said defendant of the sum of money advanced to plaintiff by said defendant, together with interest thereon at the rate of seven per cent per annum, the said defendant had a surplus amounting to the sum of $448.

From the findings thus made this court draws the following conclusions of law, which are to replace the conclusions of law heretofore drawn by the trial court:

That the plaintiff is entitled to recover from the defendants the sum of $448, together with interest on said sum at the rate of seven per cent per annum from November 10, 1929.

■ Appellant's counsel maintains that respondents should be charged with interest at the rate of seven per cent per annum upon the excess in their hands on November 24, 1928, the date on which the stock was sold for $1520. This contention entirely overlooks the fact established by the evidence submitted in the action, viz.: That respondents were obligated under their contract to return the stock or its equivalent or pay to appellant the market value of the stock at any time within the 30-day period after October 10, 1929, when appellant should repay the amount of his loan and demand the return of the pledged property. The evidence showed that he did not prior to the institution of this action comply with the conditions precedent to his demanding return of the property. Respondents were not therefore in default in failing to return the stock or pay its market value at any time prior to November 10, 1929. On that date appellant's right to demand return of the pledged stock terminated. All that then remained to him was a right to recover from respondents whatever surplus remained after deducting from the proceeds of the sale the sum originally advanced, together with interest thereon at the rate of seven per cent per annum. Upon this date respondents were likewise under the duty of paying to appellant the aforesaid surplus. Since respondents were not until that time in default it follows that they are not chargeable with interest on any surplus in their hands prior to said date (*Anderson* v. *Pacific Bank,* 112 Cal. 598, 603 [44 Pac. 1063, 53 Am. St. Rep. 228, 32 L. R. A. 479]).

■ Respondents contend that the court erred in permitting appellant to amend his complaint after the trial of

the action was concluded. Section 473 of the Code of Civil Procedure confers upon a trial court a very wide discretion in the matter of permitting amendments to pleadings. The statute contains no limitation as to the time when such amendments may be allowed. In view of the established policy of the law to construe remedial statutes with the greatest liberality we entertain no doubt that a trial court possesses the power to permit amendments to pleadings at any stage of the proceeding whether before, during or after trial (*San Francisco etc. Soc.* v. *Leonard,* 17 Cal. App. 254, 266 [119 Pac. 405]). It is only when an abuse of the very wide discretion vested in the trial court in this regard is clearly made to appear that the court's action in permitting a pleading to be amended should be disturbed on appeal (*Sweet* v. *Hamilothoris,* 84 Cal. App. 775 [258 Pac. 652]). If it does not appear that the amendment permitted by the trial court sets up a new and entirely different cause of action and that the opposing party has been prejudiced thereby no harm can be said to have resulted. On the contrary, the interests of justice are furthered in that multiplicity of actions is avoided and a more speedy termination of the matter in dispute is assured.

We think that it cannot be argued with any hope of success that the amendment to the complaint permitted by the trial court alleged a new cause of action. The most that can be said is that it contains a somewhat fuller explanation of the transaction set forth in the original complaint and that it was obviously drawn to conform to the proof made upon the trial of the cause. The amendment, for instance, omits any allegation of repayment by appellant of the indebtedness due to the respondent Stock Assurance Bureau and demand for return of the pledged securities or their equivalent or payment of the market value thereof. There is, however, an allegation of the sale of the stock by respondents for a specified sum of money and a further allegation that the market value of the stock had increased subsequent to the sale to a point where it had reached the sum of $2,100 for the 20 shares pledged. These latter allegations in no way changed the cause of action. They simply explained more fully the whole transaction which was the foundation of appellant's claim to recovery.

For the reasons stated the judgment is reversed and the trial court is directed to enter judgment in favor of appellant for the sum of $448 and interest on said sum at the rate of seven per cent per annum from November 10, 1929.

Barnard, P. J., and Marks, J., concurred.