[Civ. No. 12594. First Dist., Div. One. Aug. 22, 1944.]

RILEY M. HORN, Plaintiff and Appellant, v. OSCAR H. KLATT, Respondent; LUELLA E. HORN, Cross-Defendant and Appellant.

Fabius T. Finch and Paul F. Fratessa for Appellants.

Fitzgerald, Abbott & Beardsley for Respondent.

WARD, J.—The complaint herein sets forth a cause of action for conversion and requests an accounting. It alleges that plaintiff gave defendant his promissory note for $20,000 secured by a pledge of 20,000 shares of American Toll Bridge Company stock endorsed in blank. Defendant filed a cross-complaint asking for a deficiency judgment and alleged that the sum of $10,882.67 was owing and unpaid on the indebtedness after application thereto of the amount received from the sale of the pledged stock.

The case was tried before Hon. Warren V. Tryon, Judge of the Superior Court of Del Norte County, assigned pro tem. to Alameda County, who rendered a judgment for defendant and cross-complainant for the full amount prayed for. Plaintiff moved for a new trial. Prior to the date of hearing of the motion Judge Tryon died, and the hearing was assigned to Hon. Frank M. Ogden, Judge of the Superior Court of Alameda County, who granted the motion on the issue as to the amount defendant should recover on his cross-complaint but denied the motion as to the issues made by the complaint and defendant's answer thereto. Upon a retrial of that issue, the amount was reduced to $7,109.95. This sum was reached by taking the amount of the original note plus interest, less an amount paid by plaintiff on the principal, and from the figure so arrived at deducting the value of such shares of the 20,000 pledged as the court found defendant did not have in his possession for a short period during the existence of the pledge.

Defendant and cross-complainant did not appeal from the reduced judgment. Plaintiff has appealed from both the judgment originally rendered and the subsequent one. It was stipulated that the transcript of the evidence of the original trial, together with that of the retrial on the designated issue, should be used on this appeal.

Plaintiff was a rancher, also a stockholder in several corporations, and a director of a bank in Oregon. It appears that the Oregon bank became involved in financial difficulties; and, primarily in an effort to help save it, plaintiff, with the assistance of defendant Klatt, in April, 1927, sought a loan of $25,000 from various sources, to be secured by collateral, but without success. To this end 20,000 shares of stock, endorsed in blank, of the American Toll Bridge Company belonging to plaintiff were left in the office of that company, of which Klatt was president and both plaintiff and defendant were directors. In June, after several conversations, plaintiff succeeded in persuading defendant to loan him the sum of $20,000 secured by certificate No. 1483 for 20,000 shares of the bridge company stock. Shortly thereafter this certificate was broken up into four certificates of 5,000 shares each and the stock evidenced thereby sold from time to time. A pledge agreement entered into between the parties was in the form generally used by brokers. Plaintiff paid $5,000 on

account of the indebtedness, and in November, 1930, executed a renewal of the note, to include interest, in the sum of $18,204.17. In 1935 a renewal note and pledge were executed in favor of a family corporation of defendant. It appears that had plaintiff at any time during this period paid his indebtedness in full, defendant could have purchased 20,000 shares of the pledged stock, or any portion thereof, at a figure that would have netted him a substantial profit.

In July, 1936, a demand for payment of the note was made and notice given that the pledged stock would be sold. The stock was sold to defendant for the sum of $14,000, leaving an amount due on the indebtedness of $10,882.67. It is not contended that the sale of the stock alone constituted a conversion but rather that the conversion occurred in 1927 in the transfer of certificate No. 1483 into four certificates, and their subsequent sale. It is plaintiff's theory that in this first transfer began a chain of acts which culminated in a conversion, and that the date of the first transfer is selected as the date of conversion as a matter of convenience in presenting his cause.

Briefly, it is plaintiff's contention that defendant did not at all times from the date of the original promissory note and pledge in 1927 to the date of the sale of the securities in 1936 have on hand 20,000 shares of bridge company stock constituting the pledge, and that the sale of the stock in whatever size blocks was fraudulent and without plaintiff's knowledge or consent.

The testimony of defendant Klatt, and of witness Whitmore, the secretary of the bridge company, plus the forty-two exhibits, substantially sustain the findings of the court which follow the facts rather minutely and will therefore receive approval notwithstanding that plaintiff refers to certain evidence from which a contrary inference may be drawn. (*Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689].) Both of the trial judges found that at all times except for a short period in 1928 defendant did have 20,000 shares of the American Toll Bridge Company stock of the same kind and character which could have been delivered to plaintiff at any time upon the payment of his indebtedness. The court specifically found that "At no time did the defendant agree to hold the said stock or not to sell the same except on foreclosure

of pledge, or not to trade with it, or to do anything that he, the defendant could do to assist plaintiff in preserving said stock. Plaintiff did not, during any of said time, or up until July 27th, 1936, have or repose in the defendant the utmost confidence or trust or confidence or trust. . . . The defendant did not, either fraudulently, or without plaintiff's knowledge or consent, on or about June 2nd, 1927, or at any other time, cause the 20,000 shares of plaintiff's said stock, or any part thereof, to be transferred . . . On none of the occasions referred to in paragraph VI of plaintiff's second amended complaint did the defendant sell any shares of plaintiff's stock save only 2,625 shares thereof were sold by defendant unknowingly from the 5th to the 12th of September, 1928, for which defendant received an aggregate of $3,675. Sales of shares of the defendant's stock were, on some occasions, and at or about the times specified in said paragraph VI, fulfilled by the delivery of certificates derived from plaintiff's original certificate number 1483 but that said certificates were delivered in confirmation of said sales without the knowledge or intent of the defendant. . . .

"Defendant did not fraudulently, or otherwise, or at all, on or about November 6th, 1930, or at any other time, state to plaintiff that nothing had been paid to, or received by, the defendant on account of said loan, or otherwise, except the sum of $5,000.00. . . . The defendant did not, on or about February 7th, 1935, or at any other time, or at all, fraudulently, or otherwise, tell plaintiff that nothing had been received by defendant on account of said loan except said sum of $5,000.00, or that the entire, or any, balance of said amount of principal or of interest was unpaid. . . . Klatt did not violate any promise to plaintiff. No actions, or friendship, or pretended friendship on Klatt's part, lulled plaintiff into any sense of security or into any belief that plaintiff's original stock certificate was in the hands of Klatt or that Klatt held and retained the said certificate under said pledge but that, on the contrary, in the early part of the year 1928, the defendant informed plaintiff that said original certificate had been transferred and that plaintiff was no longer a stockholder of record in American Toll Bridge Company. . . . It is not a fact that plaintiff for the first time knew, on or about August 15th, 1936, or August 21st, 1936, that defendant had caused said stock to be transferred out of the name of the plaintiff,

but, on the contrary, plaintiff had notice and knowledge of these matters in the early part of the year 1928.''

''The relation existing between parties to a transaction where collateral is placed in the hands of the pledgee as security for the payment of a debt with power of sale in case of default is in the nature of a trust relation. The responsibility of the pledgee to the pledgor is similar to that of a trustee; he holds the stock for specific purposes,—namely, to return it to the pledgor should the indebtedness it is given to secure be paid, or if under a power of sale it is disposed of, to pay over to the pledgor any surplus which may remain. . . .'' (*Hudgens* v. *Chamberlain*, 161 Cal. 710, 715 [120 P. 422].) In *Hall* v. *Cayot*, 141 Cal. 13, 16-17 [74 P. 299], the court held: ''The action of the trial court in adjudging that plaintiff has no lien upon the certificate of stock, or upon the shares of stock represented thereby, to secure the note on which the second claim is founded, and in refusing her an order for the sale thereof, was undoubtedly based upon the fact that there was no written transfer of the stock on the part of deceased, and no transfer in the manner provided by section 324 of the Civil Code. That section provides that shares of stock are personal property, 'and may be transferred by indorsement by the signature of the proprietor, his agent, attorney, or legal representative, and the delivery of the certificate; but such transfer is not valid, except as to the parties thereto, until the same is so entered upon the books of the corporation as to show the names of the parties by whom and to whom transferred,' etc. In this case there was no delivery of the possession of the stock other than such as was accomplished by the mere delivery of the certificate, with the indorsement of the secretary of the corporation as to the purpose thereof.

''It is well settled in this state by decisions construing this statutory provision that the entry upon the books of the corporation is not essential to the validity of the transfer, except as to purchasers and transferees 'in good faith, for value and without notice.' '' The written transfer is in lieu of delivery of corporeal property. The pledge of the certificate vests in the pledgee an equitable title in the shares designated. (*Hall* v. *Cayot, supra.*) In the event of sale of the pledged property, if the sale is fair and bona fide,

the pledgee may purchase. (*Hudgens* v. *Chamberlain, supra.*) It has been held that the legal title remains in the pledgor "notwithstanding an apparent transfer of legal title to the pledgee." (*Tracy* v. *Stock Assurance Bureau,* 132 Cal.App. 573, 579 [23 P.2d 41].) ■ The pledgor's right of title, however, is merely to receive it back from the pledgee upon payment or cancellation of the debt.

■ If pledged property is converted the pledgor need not accept other property therefor, but this rule does not apply to corporate stock. (*Bell* v. *Bank of California,* 153 Cal. 234 [94 P. 889].) To render a pledgee liable for conversion it must be shown that the pledgee is unable to return the original property or, as in this case, property of the specific kind.

■ Plaintiff contends that the evidence on the part of defendant is flimsy and unsubstantial and that at no time after September, 1928, did defendant have in his possession or control 20,000 shares of stock to redeliver to plaintiff, and that in fact defendant did not own or control any shares of stock of the kind and character placed with defendant as a pledge. Plaintiff contends the evidence shows that for a large part of the time defendant did not have in his possession any of the toll bridge stock. This contention is based upon the theory that Klatt's stock, having been frozen by an attachment, could not have been used in a return of the stock "if Horn had paid his loan." Klatt's answer in part is that he did not keep all of his holdings of such stock in his own name. He testified that he had the stock under his control at all times except for the short period mentioned, and that during such period he had an option (which he exercised in December, 1928) to purchase 12,000 shares. The weight of the evidence is not a matter in which the appellate court is concerned.

The conversion of the stock in the sense that there was a short period wherein defendant did not have available 20,000 shares of the stock may be admitted in view of defendant's failure to appeal from the judgment as modified by Judge Ogden.

■ In a word, the real question in this case may be stated as follows: Does the conversion of a part of pledged securities *ipso facto* create a conversion of the entire pledge? ■ A suit for conversion of a pledge is basically an equi-

table proceeding designed to award to the pledgor and to the pledgee all that is fair and just. ▪ In cases wherein the pledgor elects to demand damages instead of a return of the pledged property, the motive of the pledgee may be taken into consideration in assessing damages. (26 R.C.L., p. 1154, par. 70.) ▪ When an action is one for the return of property and it develops that part of the property has in fact been converted, the pledgor is entitled to the return of the pledged property held intact and damages for that converted. ▪ The exercise by the pledgee of unwarranted dominion over the property, or disposition of the whole or part thereof inconsistent with and subversive of the pledgor's legal rights, is a conversion. (*Gruber* v. *Pacific States Sav. & Loan Co.*, 13 Cal.2d 144 [88 P.2d 137].)

In *Poggi* v. *Scott*, 167 Cal. 372, 375 [139 P. 815, 51 L.R.A. N.S. 925], the court said: "The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant. It rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action. 'The plaintiff's right of redress no longer depends upon his showing, in any way, that the defendant did the act in question from wrongful motives, or generally speaking, even intentionally; and hence the want of such motives, or of intention, is no defense. Nor, indeed, is negligence any necessary part of the case. Here, then, is a class of cases in which the tort consists in the breach of what may be called an absolute duty; the act itself (in some cases it must have caused damage) is unlawful and redressible as a tort.' (1 Bigelow on Torts, p. 6.)" (See, also, *Byer* v. *Canadian Bank of Commerce*, 8 Cal.2d 297 [65 P.2d 67]; *Aronson* v. *Bank of America etc. Assn.*, 9 Cal.2d 640 [72 P.2d 548]; *Coy* v. *E. F. Hutton & Co.*, 44 Cal.App.2d 386 [112 P.2d 639].)

▪ In determining the main question in this case, namely, is a conversion of part a conversion of the whole, the facts of each case must be considered. If the conversion of a part has damaged the pledgor so that the whole may not be used with the same degree of efficiency or dominion as previously and such change is due to the acts of the pledgee then the pledgor should be compensated for the detriment suffered.

We find certain decisions holding that a conversion of part is a conversion of the whole. In *Corotinsky* v. *Cooper,* 26 Misc. 138 [55 N.Y.S. 970], an action for the conversion of a buttonhole machine rented by plaintiff to defendant, certain parts of the machine were removed. The court held: "It is well settled that such an act constitutes a conversion of the whole property." Without further discussion *Bowen* v. *Fenner,* 40 Barb. 383, is cited. In the latter case plaintiff owned a threshing machine, which was on wheels owned by the defendant's son-in-law. The son-in-law had given plaintiff permission to use the wheels. On the pretence of hiring plaintiff to do threshing for him, defendant induced plaintiff to bring the machine on the borrowed wheels to defendant's farm. Defendant then claimed, mistakenly, that plaintiff was without right to use the wheels; that he could remove the machine, but not the wheels. It was held that plaintiff was entitled to recover for conversion of machine and wheels. His rightful possession of the wheels was sufficient to maintain trover against one with no right in them. The wrongful detention of the wheels was a detention also of the machine, since it compelled plaintiff to leave it at defendant's premises until he could get other wheels. In that case under all the circumstances plaintiff was not required to have that burden cast on him.

In *Nalley* v. *Thomason,* 28 Ga.App. 787 [113 S.E. 65], there is no opinion but a headnote which reads: "Where there is an unauthorized removal and appropriation to one's own use of any of the substantial and essential parts of an entire chattel, such conversion will, if the chattel be a complicated mechanism constructed to perform certain work, amount to a conversion of the whole, if the removal of such parts so impairs the chattel as to destroy its character as a whole and defeat its intended use."

In 41 American Jurisprudence, page 624, section 58, the following appears: "The obligation of the pledgee being to return all of the pledged property, a conversion of part may, at the election of the pledgor, be treated as a conversion of all, for he is entitled to the return of the very thing pledged, and is not obliged to accept a part of it only." The footnote cites *Glidden* v. *Mechanics' Nat. Bank,* 53 Ohio St. 588 [42 N.E. 995, 43 L.R.A. 737]. The facts in that case showed that there was a balance due plaintiff Glidden on a promissory note secured by a pledge of collateral in lieu of an endorser. The collateral

consisted of certain warrants on a storage company with the privilege of selling the security (972 tons of iron), applying the proceeds on the indebtedness and holding the pledgor for any deficiency. In one of the sales "the property pledged passed beyond the control of the bank" and it was no longer able to perform its contract by returning the iron to Glidden. The sale in question was unauthorized. The court held: "The obligation of the pledgee being to return all of the property pledged, a conversion of part may, at the election of the pledgor, be treated as a conversion of all."

"Conversion of a part amounts to conversion of the whole of a chattel when the circumstances evince a purpose to control or dispose of the whole of it, or whenever the remaining part is thereby impaired in value or utility." (65 C. J., p. 31, § 39.) At page 135, section 250 (65 C.J.), the following appears: "If the conversion of part of an article destroys the value of the entire article, so that the part not converted is worthless to plaintiff, the conversion is regarded as a conversion of the whole so that the ordinary measure of damages is the value of the whole article with interest; but if the part not converted remains of some value, after the conversion, the damages are limited to the extent that the property was deprived of its value to plaintiff." In support of this proposition is cited *Walker* v. *Johnson,* 28 Minn. 147 [9 N.W. 632], the facts of which are as follows: An employee of defendant, engaged in hauling a load of supplies to defendant's logging camp, took a part of plaintiff's wagon when defendant's wagon, which he was using, broke down. The court said: "There was some evidence that by the removal of the part of the wagon the remainder was rendered valueless. As to this, the court instructed the jury in effect that if taking the part rendered the wagon valueless *for the use for which it was intended,* the plaintiffs are entitled to recover the value of the wagon at the time of the conversion. This rule is not strictly accurate. If taking a part wholly destroyed the value of the wagon, so that the part not taken was of no value whatever for any purpose, the taking was equivalent to a conversion of the whole; and, in that case, the value of the whole, with interest from the time of the conversion, would ordinarily be the proper measure of damages. But if the part not taken was of any value after the severance, though of no value for the use for which it was intended, to-wit, as a wagon, the owner was not deprived of the entire value. His

damages should be to the extent only of the actual injury; that is, to the value so far as he was deprived of it. This could be shown by proof of what it would cost to replace the part taken, or by proof of value of the wagon entire, and of the remainder in the place and situation in which it was left.''

In *Herring* v. *Blue Mound Mining Co.,* 124 Kan. 171 [257 P. 955], plaintiffs owned a compressor for milling lead and zinc ore. It was on premises which they had leased and was not erected. Defendant had a mill a few miles away, which needed repairs. Defendant obtained from plaintiffs' watchman certain parts of plaintiffs' machine. The watchman had no authority to deliver them to defendant. The parts were used by defendant and later returned. The court refused to allow damages for a conversion of the whole compressor and the judgment was affirmed. The court said (p. 956 [257 P.]): ''There is nothing in the record evincing a purpose on the part of defendant to control or dispose of the whole of the compressor. Indeed, appellants do not so contend; but they do contend that the remaining part was 'thereby impaired in value or utility.' . . . If one without authority to do so were to take a spark plug, worth $1 or less, from an automobile, worth $1,000 or more, he might thereby impair its value or utility, but in a civil action against him by the owner, for damages for conversion, it could hardly be said that the measure of recovery would be the full value of the automobile. This illustration, as to its details, exaggerates appellant's claim, but in principle is identical with it. Just how much of a machine must be taken without authority should be held to be the taking of the whole must depend upon the facts and circumstances of the particular case. The measure of damages is compensation for the injury sustained. . . . Usually it is the value of the property converted at the time and place of the conversion. . . ., and for additional injury, if any, resulting from the conversion. . . .''

*New York Central R. Co.* v. *Buckley Rubber Co.,* 99 Ind. App. 191 [187 N.E. 353], involved an action for damages for the conversion of a calender, a machine for processing rubber. A portion of the calender was converted, upon which the plaintiff claimed a conversion of the whole. The court there held (p. 354 [187 N.E.]): ''In cases like this, where separate parts of a machine, engine, vehicle, or like property, must be assembled in order to make a completed whole that is capable of being used in accomplishing the purpose for

which it was designed and manufactured, *and there is a taking and conversion of one or more of the parts only, the value of the parts at the time and place of conversion,* together with such consequential damages as followed the act, *would be the limit of the amount recoverable.''* (Italics added.) (See, also, *Rubin* v. *Huhn,* 229 Mass. 126 [118 N.E. 290, 4 A.L.R. 1190].)

The decisions in cases involving machines, where it has been held in effect as a matter of law that a conversion of part is a conversion of the whole, seem to be based upon the theory that the removal of a part or parts rendered the machine unfit for its intended use. The better reasoned cases proclaim the question to be one of fact to be determined by the trier of the facts.

Likewise, in the 'instance of the pledge of a herd of live stock, reduced and perhaps depleted, the pledgee, in the event of conversion, would be permitted to pay in kind or to pay in damages for a deficiency in quantity or quality. That a conversion in grain cases is only to the extent of the minus part in storage, see *Carson State Bank* v. *Grant Grain Co.,* 50 N.D. 558 [197 N.W. 146]; *Kvame* v. *Farmers' Co-Operative Elevator Co.,* 66 N.D. 54 [262 N.W. 242]; *Central State Bank* v. *McFarlin,* 257 F. 535 [168 C.C.A. 519]. There is no doubt that grain, etc., may be listed as a fungible.

In Restatement of the Law, Restitution, page 271, section 66, it is said: ''Likewise, where the subject matter consists of chattels or choses in action which are identical in kind and quality with other chattels or choses in action, restitution may be made by giving other things of the same kind and quality. Such things are fungibles. It is not within the scope of the Restatement of this Subject to state what are fungibles, but the common illustrations are grain of a recognized kind and quality, *shares in a corporation,* and bonds issued by a corporation. In such cases a person having a duty of restoration can rightfully substitute other similar grain, *certificates of shares* or bonds.'' (Italics added.) That corporate stock may be considered a fungible, see *Richert* v. *Bennett,* 283 Ill.App. 479; *Caswell* v. *Putnam* (N. Y. Ct. of Appeal), 120 N.Y. 153 [24 N.E. 287]; *McBride* v. *Chisholm,* 144 Misc. 447 [258 N.Y.S. 821]; *Sexton* v. *American Trust Co.,* 45 F.2d 372; *Dobbs* v. *Perlman* (Ga. Ct. of Appeal), 59 Ga.App. 770 [2 S.E.2d 109].)

In support of appellants' position, *Henning* v. *Akin*, 91 Cal.App.246 [266 P. 981], is called to our attention. In that case the conversion was of the whole, and the pledgee had no shares of stock of the same kind. In the Henning case, the court said (p. 251): ''It is well established as a general proposition that a pledgee must return upon the payment of the debt the identical property pledged as collateral security. (*Hudgens* v. *Chamberlain*, 161 Cal. 710, 715 [120 P. 422]; *Atkins* v. *Gamble*, 42 Cal. 86 [10 Am.Rep. 282].) There is, however, an exception to this general rule where shares of stock of a corporation have been pledged as collateral and certain conditions exist; and, also, in cases where certain commodities are delivered in pledge, such as wheat, which in the handling becomes so mixed with other commodities of similar character that it may become impossible to return the identical commodity which was originally pledged.''

''It has been said that there is no apparent reason why the entire debt should be satisfied as a penalty for the conversion of pledged property which has an ascertainable market value.'' (41 Am.Jur., p. 625, § 59.) As a matter of law a conversion of part is not a conversion of the whole, but is, rather, a question to be determined by the facts of each case.

In view of the findings that defendant at all times except for several months during the approximate ten-year period had in his possession or under his control a sufficient number of shares of stock of the same kind and character, and that the acts of the pledgee were not performed fraudulently; that the pledgor after payment of $5,000 on account at no time offered to pay the balance of the note or demand the return of the pledge or its cancellation, and signed renewal notes though, as the court in effect found, he knew that the originally pledged shares had been transferred, we are unable to say, as a matter of law, that such conclusion is incorrect.

It appears that the appellant herein, either as plaintiff on the allegations of the complaint, or as cross-defendant on the answer to the cross-complaint, received by the judgment rendered by Judge Ogden all that he could legally or equitably obtain. The respondent did not appeal from that judgment as reduced and is bound thereby. In view of the conclusions reached, it is not necessary to consider the statute of limitations and other points raised by respondent. The briefs of appellants are mainly an attack upon the findings. When

analyzed, the objections are directed to the weight of the evidence.

Plaintiff appealed from the judgments rendered by Judge Tryon and Judge Ogden. It was stipulated that the transcript of evidence in the original trial, together with the transcript of the retrial on the designated issue should be used on this appeal.

The judgment rendered by Judge Tryon on the 27th day of June, 1941, with the exception of that part thereof for the recovery of money, is affirmed. The judgment rendered by Judge Ogden on the 16th day of August, 1943, on the sole and special issue, to wit, the amount due cross-complainant on the promissory note of the cross-defendant, is affirmed.

Peters, P. J., and Dooling, J. pro tem., concurred.

A petition for a rehearing was denied September 21, 1944.